IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON O. HILSTON, individually and as trustee of the James A. Hilston Irrevocable Trust | : CIVIL ACTION :<br>:<br>: |
| v. | :<br>: NO. 14-7269 |
| AMERICAN GENERAL LIFE INSURANCE COMPANY | :<br>:<br>: |

MEMORANDUM

KEARNEY, J.                                                                                                May 12, 2015

We now review claims brought by a successor trustee of her late father's trust and beneficiary of his trust and lapsed life insurance policy arguing her father's life insurer did not provide the predecessor trustee with the contractually mandated written notice of the premium due in December 2008 and subsequent delinquency and termination. The policy lapsed for lack of premium and when her father died in July 2012, the insurer did not tender the death benefits. At this preliminary stage, we are not interpreting policy provisions but first determine whether Ms. Hilston, as either the substitute trustee of her late father's trust or as the trust's and insurance policy beneficiary may seek damages in this action filed in December 2014 for breach of contract and bad faith in light of Pennsylvania's tort and contract statutes of limitations and discovery rule. As successor trustee, her complaint details notice to the predecessor trustee long before 2012 and thus her trustee claims for bad faith are barred by Pennsylvania's two year tort statute of limitations. Her individual beneficiary claim for bad faith is timely. As there are fact questions concerning notice in 2011 or earlier, she may also proceed on the breach of contract

with a four year statute of limitations. Plaintiff sufficiently pleads both claims at this preliminary stage.

I.  **FACTS**

Defendant American General Life Insurance Company ("AGLIC"), through a predecessor, sold a life insurance policy ("Policy") to Dr. James Hilston on December 1, 1995. (ECF Doc. No. 9, Am. Compl., ¶¶ 6, 8.) On May 30, 1996, Dr. Hilston transferred ownership of the Policy to D. Kevin Laughlin, Esquire, as trustee for the James A. Hilston Irrevocable Trust (the "Trust"). (Id. ¶ 10.) AGLIC sent all premium bills and correspondence to Attorney Laughlin. (Id. ¶ 12.)

Attorney Laughlin paid the Policy premiums as they became due. (Id. ¶ 13.) AGLIC billed premiums semi-annually, and Attorney Laughlin paid them from Trust accounts or through reimbursement from Trust accounts.[1] (Id. ¶¶ 12, 14.) The premium amount remained steady at $313.56 over the first seven (7) Policy years. (Id. ¶ 15.) The Policy then automatically renewed as an Annual Renewable Term Plan, effective December 1, 2002. (Id. ¶ 16.) The premium amount of the Annual Renewable Plan remained steady for the first year at $686.40 but was subject to an annual increase in an amount not to exceed the Policy's maximum renewal premium. (Id. ¶ 18.)

The Policy required AGLIC to provide written notice at the beginning of each policy year of the required premium for that year. (Id. ¶ 25.) From July 1, 1996 to June 1, 2008, Attorney Laughlin, as trustee, made all premium payments. (Id.) Plaintiff alleges that AGLIC failed to

---

[1] Plaintiff does not have a physical copy of the Policy. (Id. ¶ 7.) AGLIC informed Plaintiff that it does not keep "a copy of the original policy mailed to the client." (Id. ¶ 41.) However, AGLIC provided Plaintiff with a "specimen copy" of the Policy, which Plaintiff believes contains the substantive provisions of the Policy. (Id. ¶ 7.)

provide written notice of the premium due in December 2008. (*Id.* ¶ 28.) As a result, Attorney Laughlin did not pay the premium for December 2008. (*Id.* ¶ 29.) Plaintiff alleges that after not receiving payment, AGLIC decided to lapse the Policy for non-payment of premiums. (*Id.*) Plaintiff alleges that in addition to the notice of premium, AGLIC failed to send a notice of lapse, grace period, termination, or reinstatement of rights. (*Id.*) Accordingly, she alleges that Dr. Hilston, Attorney Laughlin, and Plaintiff did not know of the coverage lapse until **March 3, 2011**, when AGLIC informed Attorney Laughlin that the Policy lapsed on January 31, 2009 for non-payment of premiums.[2] (*Id.* ¶ 30.) In June 2011, AGLIC sent Attorney Laughlin a reinstatement application but due to Dr. Hilston's health he was unable to present evidence of insurability necessary for reinstatement. (*Id.* ¶ 32.) Dr. Hilston passed away on July 19, 2012. (*Id.* ¶ 33.)

In 2013, Plaintiff sued Attorney Laughlin for his failure as trustee to prevent the Policy lapse.[3] (*Id.* ¶ 35.) Attorney Laughlin answered he was not responsible for the Policy lapse because he never received notice from AGLIC. (*Id.* ¶ 36.) Plaintiff then subpoenaed AGLIC requesting "[a]ll premium due notices for the Policy", "[a]ll lapse notices for the Policy", and "[a]ll termination or cancellation notices for the Policy." (*Id.* ¶ 36.) AGLIC ultimately never provided those particular documents and informed Plaintiff that it does not keep those records from that long ago. (*Id.* ¶ 42.) On April 2, 2014, Plaintiff demanded payment of death benefits allegedly owed under the Policy. (*Id.* ¶ 45.) On April 28, 2014, an associate general counsel for

---

[2]  While the Policy lapsed for non-payment of premiums on December 1, 2008, it did not terminate until January 31, 2009.

[3]  Plaintiff alleges she became successor trustee following Attorney Laughlin's resignation. (*Id.* ¶ 11.)

3

AGLIC advised that AGLIC denied the demand because the Policy lapsed in December 2008. (*Id.* ¶ 47.)

Plaintiff, as the substitute trustee and the trust beneficiary, waited until December 2014 to sue AGLIC for breach of contract (Count I) and statutory bad faith pursuant to 42 Pa. Con. Stat. § 8371 (Count II).

## II.   STANDARD OF REVIEW

AGLIC moves to dismiss the Amended Complaint arguing that both claims are barred by the applicable statute of limitations and Plaintiff fails to state a claim upon which relief can be granted. AGLIC also requests a rule to show cause that Plaintiff is the lawful trustee.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for a failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.2010) (alteration in the original) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). We must "accept all the factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (alteration in original) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

A plaintiff is obligated to plead "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). It must give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007) (alteration in original) (quoting *Conley,* 355 U.S. at 47.) The complaint need not contain "detailed factual allegations" but must set forth " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.,* 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Any "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Fowler,* 578 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555.).

"A statute of limitations defense may be asserted in a motion to dismiss under Rule 12(b)(6) 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Frasier–Kane v. City of Philadelphia*, 517 F. App'x 104, 105 n.1 (3d Cir. 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994)). "When evaluating a Rule 12(b)(6) motion to dismiss on statute of limitations grounds, a court may consider matters of public record, or orders, exhibits attached to the complaint and undisputedly authentic documents if the plaintiff's claims are based on those documents." *Eastern Steel Constructors, Inc. v. Nichols*, No. Civ. A. 03–6680, 2004 WL 1878237 at *4 (E.D. Pa. Aug. 23, 2004) (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196).

### III.   ANALYSIS

#### A.   Bad Faith Claim

AGLIC seeks to dismiss Plaintiff's statutory bad faith claim arguing: 1) it is barred by the two-year statute of limitations; and 2) Plaintiff fails to state a claim for bad faith. We find the claim as trustee is barred by the two-year statute of limitations but Ms. Hilston states a bad faith claim as the beneficiary and may proceed into discovery with her bad faith claim.

### *i. The bad faith claim is not barred by the statute of limitations as to Ms. Hilston as a beneficiary.*

"In resolving the timeliness issue, the Court must first determine the applicable statute of limitations and the accrual date for a bad faith claim under state law." *CRS Auto Parts, Inc. v. National Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 364 (E.D. Pa. 2009). Neither party disputes that Pennsylvania applies a two-year statute of limitations to statutory bad faith claims. *See Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007).

Plaintiff and AGLIC dispute the accrual date for the bad faith claim. AGLIC argues that the claim arose when the Policy lapsed for non-payment of premiums. (ECF Doc. No. 11-1, Def.'s Mem., 7-10.) AGLIC argues that Dr. Hilston and Attorney Laughlin were aware of the Policy's lapse and termination no later than June 15, 2011. (*Id.* at 9.) At that time, AGLIC sent Dr. Hilston and Attorney Laughlin a letter confirming that the Policy lapsed for non-payment of premiums and that the policy was no longer "providing any insurance coverage." (ECF Doc. No. 9, Am. Compl., Exs. I & J.) AGLIC argues that because Dr. Hilston and Attorney Laughlin became aware that Policy lapsed in December 2008 and terminated in January 2009, the right for a trustee to institute the bad faith cause of action accrued in June 2011 and ran through June 2013. Plaintiff disagrees with AGLIC's statute of limitations calculation arguing that the statute of limitations began to run when AGLIC denied benefits on April 28, 2014. (ECF Doc. No. 17, Pl.'s Opp., 16-19.) Since Plaintiff did not make a claim for benefits until April 2014, which was denied shortly thereafter, Plaintiff argues her claim is timely. Plaintiff argues that without a claim for benefits, it is impossible for a bad faith claim to exist. As such, Plaintiff argues that § 8371 is interpreted strictly to require a denial of benefits for a cause of action to accrue.

6

Generally, the statute of limitations begins to run on a claim when a right to institute and maintain suit arises. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224-25 (3d Cir. 2005) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (2000). For a bad faith claim under § 8371, the "claim arises upon a 'frivolous or unfounded refusal to pay proceeds of policy.'" *Id.* at 225 (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (1999)). However, bad faith is not limited to the "literal act of denying a claim." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004). Indeed, "[w]hile it is an unfounded refusal to pay proceeds of policy that is at the heart of a bad faith claim, at some point, the failure of the insurer to . . . provide coverage puts the insured on notice that the insurer has denied coverage." *MP III Holdings, Inc. v. Hartford Cas. Ins. Co.*, No. 08-4958, 2011 WL 2604736, *16 (E.D. Pa. June 30, 2011) (internal quotations omitted). Thus, "an action for bad faith denial of coverage accrues when the insured first learned that the insurance company was denying coverage." *Romeo v. Unumprovident Corp.*, No. 07-1211, 2008 WL 375161, *3 (E.D. Pa. Feb. 11, 2008).

Plaintiff argues there is a "bright-line" rule that a claim for bad faith accrues when the insurance company denies a claim for benefits relying principally on three cases: *Adamski*, 738 A.2d at 1038; *Sikirica*, 416 F.3d at 224; and *Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 632 (E.D. Pa. 2004). (ECF Doc. No. 17, Pl.'s Opp., 16.) Contrary to Plaintiff's argument, Pennsylvania courts, including courts within this District, have not strictly limited statutory bad faith to the literal denial of benefits. *See W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 317-18 (3d Cir. 2003) (bad faith actionable for failing to follow internal guidelines); *Gold v. State Farm Fire and Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) ("Actionable bad faith encompasses behavior beyond the denial of a claim . . . ."); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (Pa. Super. Ct. 2002) (bad faith actionable for failing to follow

Nationwide's Pennsylvania Best Claims Practice Manual); *O'Donnell ex rel. Mitro v. Allstate Ins.*, 734 A.2d 901, 906 (Pa. 1999) (bad faith may occur from litigation misconduct); *Liberty Mut. Ins. Co. v. Marty's Exp., Inc.*, 910 F. Supp. 221 (E.D. Pa. 1996) (extending bad faith to insurer's rating and collecting of premiums in accordance with retrospective policy). "[T]he statute is to be given a broad interpretation, and it is clear that 'bad faith suits are not restricted to the denial of claims.'" *Kohn v. Unumprovident Corp.*, No. 04-4929, 2008 WL 4787556, *8 (E.D. Pa. Oct. 31, 2008).

We find the January 2009 termination without providing notice of lapse is the alleged bad faith conduct from which Plaintiff seeks relief. Plaintiff attempts to circumvent the statute of limitations by arguing that her bad faith claim did not arise until AGLIC denied her claim. This position is untenable given the Plaintiff's bad faith claim is almost entirely based on AGLIC's conduct when the Policy lapsed: "at the time AGLIC decided to administratively declare the Policy lapsed for non-payment of the December[] 2008[] premium, AGLIC had not conducted any investigation regarding the propriety of the lapse and whether proper notices had been sent." (ECF Doc. No. 9, Am. Compl., ¶ 60.) This is the essence of Plaintiff's bad faith claim. We find that the bad faith cause of action for bad faith accrued on January 31, 2009.

However, we are not blind to the fact Attorney Laughlin, Dr. Hilston, and Plaintiff allegedly did not know of the Policy termination in December 2008 or January 2009. In Pennsylvania, the discovery rule acts to toll the statute of limitations until a plaintiff knew, or in the exercise of reasonable diligence should have known, that he has been injured and by what cause. *See Wilson v. El-Daeif*, 964 A.2d 354, 359 (Pa. 2009); *Bariski v. Reassure Am. Life Ins. Co.*, 834 F. Supp. 2d 233, 237 (M.D. Pa. 2011) (applying Pennsylvania discovery rule to statutory bad faith claim). It was not until Attorney Laughlin requested a Policy status update

from AGLIC that he learned AGLIC terminated the Policy. (ECF Doc. No. 9, Am. Compl., ¶ 30.) On March 3, 2011, AGLIC informed Attorney Laughlin that the Policy "is no longer in force nor providing any insurance coverage." (*Id.* at Ex. I.) In response, Attorney Laughlin informed AGLIC that this news "comes as a surprise to myself . . . , and to the insured, since neither of us were given notice of the termination." (*Id.* at Ex. W, part 2, 18.) It is clear from this statement, that both Attorney Laughlin and Dr. Hilston were aware of the fact that AGLIC allegedly failed to supply notice before terminating the Policy. Further, On June 15, 2011, AGLIC responded to Attorney Laughlin's correspondence and provided more information regarding the Policy's termination. (*Id.* at Ex. J.)

These letters unambiguously state that the Policy no longer provided coverage for the insured. AGLIC thus placed Attorney Laughlin and Dr. Hilston on notice that the Policy would not be providing death benefits to Dr. Hilston, and serves as an initial denial of benefits. At this point, Attorney Laughlin and Dr. Hilston were on notice that AGLIC terminated the Policy. Further, Attorney Laughlin informed AGLIC that neither he nor Dr. Hilston received notice regarding the terminated Policy. Thus, at that time Attorney Laughlin and Dr. Hilston knew that they had been harmed and the cause. The subsequent denial of benefits in 2014 can simply be classified as a "continuing refusal" to provide benefits under the policy and is not actionable. *See Adamski*, 738 A.2d at 1043. Therefore, we find that the statute of limitations was tolled until June 15, 2011, at the latest. Because Plaintiff, as trustee, did not commence suit against AGLIC until December 23, 2014, her bad faith claim as a trustee is barred.

The discovery rule is applied differently to Plaintiff as the beneficiary. Dr. Hilston passed away on June 19, 2012, at which point, AGLIC argues, Plaintiff obtained standing to pursue the bad faith claim in her individual capacity as a beneficiary of the Trust and the Policy.

Therefore, AGLIC argues the claim is barred as Plaintiff did not institute this action until December 23, 2014.

We find Plaintiff's claim as a beneficiary is not barred by the statute of limitations at this stage in the proceedings. A beneficiary does not obtain standing until the death of the insured. *See Kucera v. Metropolitan Life Ins. Co.*, 719 F.2d 678, 680 (3d Cir. 1983). As beneficiary of the trust, Plaintiff gained standing to bring suit on June 19, 2012. However, Plaintiff avers that she did not become aware of AGLIC's deficient notices until 2014. (ECF Doc. No. 9, Am. Compl., ¶ 34.) While it may become evident through discovery that Plaintiff had knowledge of AGLIC's failures earlier than 2014, at this stage in the proceedings we are constrained to construe the factual allegations in the Amended Complaint as true. *Cf. Bariski*, 834 F. Supp. 2d at 239 (finding individual bad faith claim to have run where insured informed plaintiff of belief that insurance policy was wrongly terminated). Thus, Plaintiff's individual claim for bad faith is timely filed.

### ii. *Plaintiff states a bad faith claim as beneficiary.*

AGLIC argues that Plaintiff cannot state a claim for statutory bad faith. Pennsylvania provides statutory relief for plaintiffs complaining of bad faith by an insurer. 42 Pa. Con. Stat. § 8371. To establish bad faith by an insurer, a plaintiff must show: (1) the insurer lacked a reasonable basis for denying the benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. *See Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (adopting *Terletsky* test for statutory bad faith). While "mere negligence or bad judgment does not constitute bad faith . . . recklessness on the part of the

10

insurer can support a finding of bad faith." *Padilla v. State Farm Mut. Auto Ins. Co.*, 31 F. Supp. 3d 671, 675 (E.D. Pa. 2014).

We find Plaintiff alleges sufficient factual allegations to state a claim for statutory bad faith. Plaintiff alleges AGLIC failed to provide notices of premium due, grace period, lapse, reinstatement, or termination to Attorney Laughlin or Dr. Hilston. (ECF Doc. No. 9, Am. Compl., ¶ 22, 29.) Further, Plaintiff alleges that AGLIC knew that the requisite notices had not been sent to Attorney Laughlin or Dr. Hilston and still proceeded to terminate the Policy.[4] (ECF Doc. No. 9, Am. Compl., ¶ 59.) Plaintiff also alleges that at the time AGLIC decided to lapse the Policy, it failed to investigate the propriety of the lapse and whether the requisite notices had been sent. (*Id.*) We find that these allegations are sufficient to state a claim at this stage in the proceedings. If AGLIC did in fact lapse the Policy with knowledge that it had not sent the required notices, then it arguably lacked a reasonable basis to terminate the Policy. Further, if AGLIC had that knowledge and still terminated the Policy, it disregarded its lack of a reasonable basis. This may constitute more than "mere negligence" or "bad judgment" and in fact may evidence "recklessness" on the part of AGLIC. *Padilla*, 31 F. Supp. 3d at 675. At this stage, Plaintiff pleads forth sufficient facts to state a claim for statutory bad faith.

---

[4] Plaintiff's Opposition asserts that a violation of the Pennsylvania Unfair Insurance Practices Act ("UIPA") may constitute bad faith. (ECF Doc. No. 17, Pl.'s Opp., 16.) We note that the Pennsylvania Superior Court has allowed the consideration of UIPA when evaluating bad faith. *See Brickman Grp. Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 930 (Pa. Super. Ct. 2004). However, federal courts in this Circuit have taken the opposite approach. *See UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505-06 (3d Cir. 2004) (finding plaintiff cannot rest bad faith claim on violation of UIPA); *Purcell v. State Farm Mut. Auto Ins. Co.*, No. 11-7004, 2012 WL 425005, *5-6 (E.D. Pa. Feb. 10, 2012) (concluding bad faith claim fails as matter of law when based upon UIPA violations). We follow the federal courts within this Circuit and find that violations of the UIPA cannot support a statutory bad faith claim.

### B. Breach of Contract Claim

#### i. *Plaintiff's breach of contract claim is not barred by the statute of limitations.*

Plaintiff's breach of contract claim is governed by Pennsylvania's four-year statute of limitations. 42 Pa. Con. Stat. § 5525(8); *Simon Wrecking*, 350 F. Supp. 2d at 634. AGLIC argues that Plaintiff, along with Dr. Hilston and Attorney Laughlin, should have known that any breach of the contract occurred in 2009 when AGLIC lapsed the Policy for non-payment of premiums. (ECF Doc. No. 11-1, Def.'s Mem., 17-18.) Plaintiff counters by arguing that the breach is only AGLIC's denial of benefits on April 28, 2014. (ECF Doc. No. 17, Pl.'s Opp., 12.) As we did above, we find that any alleged breach occurred no later than January 2009. However, because Dr. Hilston, Attorney Laughlin, and Plaintiff allegedly did not know of a breach until at the earliest March 2011, we find on this preliminary record that the statute was tolled until March 2011. *See Morgan v. Petroleum Prods. Equip Co.*, 92 A.3d 823, 828 (Pa. Super. Ct. 2014) ("The discovery rule applies to all causes of action, including breach of contract."). Because Plaintiff filed this action in December 2014, the breach of contract claim is timely filed.

#### ii. *Plaintiff states a claim for breach of the Policy.*

AGLIC argues that Plaintiff's claim fails because Attorney Laughlin paid premiums for thirteen (13) consecutive years and should have been aware that the Policy required a premium payment in December 2008. Further, AGLIC argues that Attorney Laughlin actually knew the amount due in December 2008. We find neither of these factual defenses dispositive at this stage.

12

Plaintiff states a claim for breach of contract. In *Jarvis v. Workmen's Compensation Appeal Bd.*, 441 A.2d 1189 (1981), the Pennsylvania Supreme Court held an insurer "cannot be permitted to silently ignore the harm that can result from failure to notify the insured of the termination of an agent, and the consequent non-renewal of coverage." 441 A.2d at 1191. In *Geise v. Nationwide Life and Annuity Co.*, 939 A.2d 409 (Pa. Super. Ct. 2007), the Superior Court held where the amount due was uncertain and the insured relied on the insurer for notification of the amount due, the insured's payment of past premiums as evidence that he knew a premium was due was not relevant. 939 A.2d at 420-21. These two cases taken together demonstrate Plaintiff has a plausible claim for breach of the insurance contract. AGLIC has not sufficiently distinguished these cases.

Further, the Policy premiums remained level for the first seven years the Policy was effective. After those seven years, the Policy provides that "[b]efore each such policy year begins, written notice of the premium for that year will be mailed by the Company to the Owner." (ECF Doc. No. 9, Am. Compl, Ex. D, 6.) Thus, it is entirely plausible Attorney Laughlin did not know the amount of the premium due before receiving the yearly notice. Plaintiff alleges that AGLIC failed to mail notice of the premium due for the Policy year beginning in December 2008. AGLIC's contrary argument is unavailing. The Policy's anniversary date is December rather than June and as such AGLIC's letter explaining the premium in December 2007 and June 2008 did not include any notice of the premium amount due in December 2008. (*Id.* ¶ 16.) Plaintiff alleges that AGLIC failed to provide notice of its terminating the Policy and this failure caused AGLIC to wrongfully terminate the Policy. Plaintiff alleges that because AGLIC'S Policy termination violated the Policy language, she is

still entitled to the benefits under the policy. Plaintiff alleges sufficient facts to state a claim for breach of contract.

### C.  Defendant's request for a rule to show cause is denied.

Absent a motion, Defendant requests this Court issue a rule to show cause that Plaintiff is the legal trustee of the Trust. (ECF Doc. No. 11-1, Def.'s Mem., 18-19.) If Defendant wishes to challenge the legality of Plaintiff's appointment as Trustee or her standing to bring this suit then it may engage in discovery and move after developing a record.

## IV.  CONCLUSION

We find Plaintiff waited too long to bring her statutory bad faith claim as Trustee of the Trust, but not as an individual beneficiary. Further, we find Plaintiff's breach of contract claim is timely filed and states a plausible claim for relief. Lastly, we deny Defendant's request that this Court issue a rule to show cause as to Plaintiff's legal status without prejudice.